**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

JEREMIAH KELLY :
:
v. : Civil No. WMN-06-0702
:
LEONARD HAMM et al. :
:
:

**MEMORANDUM**

Before the Court is the motion of Defendants, Police Commissioner Leonard Hamm, Colonel Walter Tuffy, and Chief Edward Ambrose, to dismiss the amended complaint. Paper No. 5. Plaintiff, Jeremiah Kelly, has opposed the motion and Defendants have replied. Upon a review of the pleadings and applicable case law, the Court determines that no hearing is necessary (Local Rule 105.6) and that Defendants' motion will be granted in part and denied in part.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

On March 10, 2001, Jeremiah Kelly was terminated from his position as a Sergeant in the Baltimore City Police Department ("BPD") due to his alleged involvement in approving a false police report made by a subordinate police officer. The Trial Board of the BPD approved Kelly's termination and the District Court for Baltimore City, Maryland, upheld that decision. On August 13, 2003, however, the Court of Special Appeals of Maryland reversed the District Court's decision and ordered Kelly reinstated to the rank of Sergeant. Shortly after the issuance of the order for reinstatement, Kelly was indicted on federal criminal charges and, consequently, the BPD suspended him without

pay. In July of 2005, Kelly was acquitted of all criminal charges and began receiving pay at the rate of sergeant.

On March 16, 2006, Kelly filed a complaint in this Court alleging that the BPD refused him the rights and benefits that traditionally accompany the rank of sergeant and that the BPD's treatment of his reinstatement violated federal and state law. Specifically, Kelly contends that, in November of 2005, Defendant Walter Tuffy, the Director of the BPD's Internal Affairs Department, ordered an investigation into the charges which constituted the basis of the federal indictment. Kelly alleges that, following the investigation, Tuffy and Defendant Edward Ambrose, the Police Chief of the BPD, agreed to create a situation in which Kelly would be forced to reapply for his employment in an effort to use the re-application process as a pretext for finding something in Kelly's past which could be used to justify termination.

Kelly also alleges that, in November of 2005, Defendant Leonard Hamm, the Commissioner of the BPD, notified Kelly that he would be the subject of a one person lay-off. That notification, however, ultimately had no effect as Kelly remained on the BPD payroll. In January of 2006, Kelly received an assignment to monitor the motor pool. Kelly alleges that since his return to the BPD, he has been subjected to and threatened with background investigations normally reserved for applicants, including investigations into his financial status and mental health, and polygraph questioning regarding his background. Further, Kelly

alleges that he has been refused the full benefits of the rank of sergeant, including the receipt of health benefits, step increases in pay, the provision of a uniform and other police equipment, and other supervisory powers which normally accompany the rank.

In Counts I, II, and V of his amended complaint, Kelly argues that Defendants' refusal to fully reinstate him to the rank of sergeant, their attempts to force Kelly through the re-application process, and their alleged use of governmental power as an instrument of oppression, constitute violations of his federal and state due process rights. In Count VI, Kelly argues that Defendants abused their governmental power as a result of personal animus towards him and that they intentionally treated him differently from those similarly situated to him, resulting in a violation of his federal and state equal protection rights. Finally, in Counts III, IV, and VII, Kelly alleges that Defendants' actions constituted retaliation against him for his decision to appeal his termination and his decision to present a defense in his federal criminal case, activity protected under the U.S. Constitution, the Maryland Law Enforcement Officer's Bill of Rights ("LEOBR"), and the Maryland Declaration of Rights.

On August 2, 2006, Defendants filed the instant Motion to Dismiss alleging that Kelly's claims are barred by the doctrines of res judicata and collateral estoppel, that Kelly fails to state a claim upon which relief could be granted, and that Defendants are protected from suit under the doctrine of

qualified immunity.

## II. STANDARD OF LAW

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure should not be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). In considering such a motion, the court is required to accept as true all well-pled allegations in the Complaint, and to construe the facts and reasonable inferences from those facts in the light most favorable to the plaintiff. See Ibarra v. United States, 120 F.3d 472, 473 (4th Cir. 1997). "To survive [a] motion to dismiss, Plaintiffs must have alleged facts that show that they are entitled to relief on their substantive causes of action." In re Criimi Mae, Inc. Securities Litigation, 94 F. Supp. 2d 652, 656 (D. Md. 2000).

Kelly titled each of the claims in his amended complaint and referred to 42 U.S.C. § 1983 in the title of Counts I, II, III, IV, VI, and VII. To support a claim under § 1983, Kelly must establish that he was "deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." American Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999).

## III. DISCUSSION

### A. Res Judicata and Collateral Estoppel

Defendants first argue that Kelly's claims are barred under

the doctrines of res judicata (claim preclusion) and collateral estoppel (issue preclusion). Defendants' argument arises from a petition, filed on January 27, 2006, in the Circuit Court for Baltimore City, Maryland, in which Kelly argued that the BPD's failure to fully reinstate him constituted civil contempt. The BPD opposed the petition, asserting substantive and procedural deficiencies. On February 22, 2006, the Baltimore Court summarily denied Kelly's petition. Paper No. 7, Exhibit 4. Despite the nature of the order, which denied Kelly's petition with no accompanying legal memorandum or discussion as to the basis for denial, Defendants argue that this order precludes Kelly from "relitigating" this matter in federal court.

The related doctrines of res judicata and collateral estoppel embody the concept that a "right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction . . . cannot be disputed in a subsequent suit between the same parties or their privies . . . ." Montana v. U.S., 440 U.S. 147, 153 (1979) (citing S. Pac. R.R. v. U.S., 168 U.S. 1, 48-49 (1897)). "Under res judicata, a final judgment on the merits bars further claims by parties or their privies based on the same cause of action." Montana, 440 U.S. at 153. A state court judgment will have the same res judicata effect in federal court as it would have had in the state in which it was decided. Warwick Corp v. Md. Dept. of Transp., 573 F. Supp. 1011, 1012 (D. Md. 1983). In Maryland, for res judicata to apply, "(1) the parties in the present litigation should be the

same or in privity with the parties to the earlier case; (2) the second suit must present the same cause of action or claim as the first; and (3) in the first suit, there must have been a valid final judgment on the merits by a court of competent jurisdiction." Colandrea v. Wilde Lake Cmty. Ass'n, 761 A.2d 899, 910 (Md. 2000). The "valid final judgment on the merits" requirement is not satisfied when a state court dismisses an action due to a procedural defect. Warwick, 573 F. Supp. at 1013 (noting that Maryland courts have distinguished "merely procedural dismissals, which would allow relitigation of the case if the procedural bar is removed, [from] dismissals for substantive matters, which would completely bar relitigation."); see also Annapolis Urban Renewal Auth. v. Interlink, Inc., 405 A.2d 313, 318 (Md. Ct. Spec. App. 1979) ("When a court dismisses an action because of jurisdictional, procedural, or venue problems, it is acting for reasons that do not go to the substance of the case.").

Here, Defendants fail to show that the Baltimore Court's denial of Kelly's petition constituted a valid final judgment on the merits. In its Opposition to Petitioners' Motion for Constructive Civil Contempt and Motion to Strike, the BPD argued, in part, that Kelly's petition failed to expressly state whether incarceration was sought and, therefore, failed to satisfy the content requirements of Maryland Rule 15-206(c).[1]

---

[1] Maryland Rule 15-206(c)(1) requires that petitions for civil contempt expressly state whether incarceration is sought. Following the entry of a petition, Rule 15-206(c)(2) requires the

Paper No. 7, Exhibit 3, ¶ 2. The BPD specifically argued that this procedural defect should result in the Court's presumptive dismissal of Kelly's petition. Id. Because the procedural defect in Kelly's state court petition may have served as the basis for the denial of that petition, this Court cannot find that the state court's ruling was a ruling on the merits of Kelly's claim, precluding Kelly from litigating his claim in federal court. See Restatement (Second) of Judgments § 20, cmt. e (1982) ("A dismissal may be based on two or more determinations, at least one of which, standing alone, would render the judgment a bar to another action on the same claim. In such a case . . . it should not operate as a bar. Even if another of the determinations, standing alone, would render the judgment a bar, that determination may not have been as carefully considered as it would have had it been necessary to the result . . . .").

Similarly, Defendants have failed to show that the issues raised by Kelly in state court are precluded from adjudication in federal court under the doctrine of collateral estoppel.

---

court to enter an order providing for a prehearing conference, a hearing, or both, unless the court finds the petition for contempt to be frivolous on its face. Defendants urge this Court to assume that the Baltimore Court found Kelly's petition to be facially frivolous because that Court failed to schedule a prehearing conference or a hearing. It is possible, however, that, because Kelly's petition failed to comply with the initial content requirements of Rule 15-206(c)(1), the Baltimore Court declined to make a determination as to the frivolity of Kelly's substantive claims, and denied the petition solely on procedural grounds. Without further evidence as to the rationale of the Baltimore Court, this Court declines to adopt Defendents' assumption.

Maryland has identified a four part test for determining whether the doctrine of collateral estoppel bars relitigation of an issue:

> 1. Was the issue decided in the prior adjudication identical with the one presented in the action in question?
> 2. Was there a final judgment on the merits?
> 3. Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication?
> 4. Was the party against whom the plea is asserted given a fair opportunity to be heard on the issue?

Colandrea, 761 A.2d at 909. Here, Defendants have failed to satisfy the first requirement. Because the Baltimore Court did not identify a basis for dismissing Kelly's petition, and may have based its dismissal solely on procedural grounds, the issues adjudicated in that Court were not necessarily identical to the ones presented in the instant action. See Ellett v. Giant Food, Inc., 505 A.2d 888, 893-94 (Md. Ct. Spec. App. 1986) (where it is unclear whether an issue was decided in an initial action, the litigant is not precluded from raising that issue in a later action); see also Restatement (Second) of Judgments § 27, cmt. i ("If a judgment of a court of first instance is based on determinations of two issues, either of which standing independently would be sufficient to support the result, the judgment is not conclusive with respect to either issue standing alone.").

**B. Procedural Due Process (Counts I and II)**

Kelly first claims that Defendants' requirement that he undergo certain recertification procedures prior to being fully

reinstated to the rank of sergeant constituted an abuse of power which violated his procedural due process rights under the Fourteenth Amendment of the U.S. Constitution and the Maryland Constitution, Declaration of Rights, Article 24.[2] "The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." Bd. Of Regents of State Colleges v. Roth, 408 U.S. 564, 569 (1972). A state or local government employee has a protected property interest if he can show a "legitimate claim of entitlement" to continued public employment under state or local law. Id. at 577. Generally, state and local employees are considered at-will under Maryland law. Bowers v. Town of Smithsburg, Md., 990 F. Supp. 396, 398 (D. Md. 1997). The Baltimore City Code, however, provides city police officers with a protected interest in their employment. Md. Code of Public Local Laws of Baltimore City, Art. 4 § 16-11(a) ("All members of the Department, except those serving at the pleasure of the Commissioner . . . shall be retained in the Department during good behavior and efficiency and may be dismissed or removed, from the Department only for cause . . . .").

In Count I, Kelly bases his procedural due process argument

[2] Maryland's highest court has held that "Article 24 of the Maryland Declaration of Rights and the Fourteenth Amendment of the United States Constitution have the same meaning, and that Supreme Court interpretations of the Fourteenth Amendment function as authority for Article 24." Pitsenberger v. Pitsenberger, 410 A.2d 1052, 1056 (Md. 1980).

on his right to employment in the BPD, arising under § 16-11(a). Kelly admits, however, that he is currently being retained by the BPD and that he is receiving salary at the rank of sergeant. Kelly does not raise any procedural due process violations with regard to his initial termination proceedings or his subsequent appeals. Thus, the substance of Kelly’s allegation in Count I is that Defendants’ requirement that Kelly undergo certain certification procedures constitutes a violation of his right to employment. Kelly fails, however, to identify any statutory or regulatory support for his alleged right to be free of recertification procedures. See Bd. of Regents, 408 U.S. 564, 569 (4th Cir. 1979) (Protected property interests in employment benefits are created by existing rules or understandings that stem from an independent source, such as state law.). Thus, his procedural due process claim in Count I fails.

In Count II, Kelly alleges that an "implied mutual understanding" exists within the BPD that those who have successfully appealed a Trial Board termination decision need not undergo examination procedures prior to returning to their previous state of service. Defendants argue that state law requires that police officers must meet basic qualifications for continued certification. Md. Code Regs. 12.04.01.07 (providing the requirements for police officer certification). Defendants further note that, because three years had lapsed since Kelly’s last certification, state law required Kelly to satisfy the conditions provided in Maryland state regulations. See Md. Code

Ann., Pub. Safety § 3-210(a) ("The certification of a police officer automatically lapses 3 years after the date of the previous certification."). Again, Kelly fails to point to any statute or institutional regulation entitling him to be free of the certification procedures. See Bd. of Regents, 408 U.S. 564, 577 (1972) (constitutional rights in employment benefits are created by statute or institutional regulation); see also James v. Powell, 765 F. Supp. 314, 317 (E.D. Va. 1991) (absent a rule-created entitlement, plaintiff cannot have a constitutionally protected interest in benefits such as continued employment or promotion). Thus, Kelly fails to establish a due process right to be free of the recertification procedures required by Maryland law. Accordingly, Counts I and II will be dismissed.

**C. Substantive Due Process (Count V)**

Kelly alleges that the Defendants' actions constitute an abuse of governmental power, violating Kelly's substantive due process right to be free of oppressive governmental action. Kelly cites no authority in support of this claim, other than a general reference to the United States Supreme Court decision in County of Sacramento v. Lewis, 523 U.S. 833 (1998).[3] In Sacramento, the court found that "the substantive component of the Due Process Clause is violated by executive action only when it 'can properly be characterized as arbitrary or conscience

[3] Although he does not refer to the case elsewhere in his Amended Complaint or in his Opposition to Defendants' Motion to Dismiss, Kelly titled Count V "*Sacramento* Substantive Due Process Violation[.]" Paper No. 3, p.9.

shocking in a constitutional sense.'" Id. at 847 (citing Collins v. Harker Heights, 503 U.S. 115, 128 (1992)); see also Harrington v. Harris, 118 F.3d 359, 368 (5th Cir. 1997) ("To succeed with a claim based on substantive due process in the public employment context, the plaintiff must show two things: (1) that he had a property interest/right in his employment, and (2) that the public employer's termination of that interest was arbitrary or capricious.") (citing Moulton v. City of Beaumont, 991 F.2d 227, 230 (5th Cir. 1993)).

Here, Kelly has not shown a due process right in his alleged freedom from having to undergo recertification procedures, nor has he shown that Defendants' actions were arbitrary or conscience-shocking. As stated above, Defendants have shown that state law required Kelly to satisfy certain certification conditions and that the substance of those conditions were provided in Maryland state regulations. See Md. Code Ann., Pub. Safety § 3-210(a); Md. Code Regs. 12.04.01.07. Further, as noted above, although Kelly has a property interest in his employment, he has failed to allege such an interest in being free from having to undergo the recertification procedures provided by Maryland law. See James, 765 F. Supp. at 317 (absent a rule-created entitlement, plaintiff cannot have a constitutionally protected interest in benefits such as continued employment or promotion). Thus, this Court finds that Kelly has failed to state a violation of his substantive due process rights. Accordingly, Count V will be dismissed.

**D. Due Process Retaliation (Count III)**

Additionally, in Count III, Kelly alleges that Defendants violated his rights under the Sixth and Fourteenth Amendments of the U.S. Constitution and Articles 21 and 24 of the Maryland Declaration of Rights by denying him the full value of his public employment in retaliation for his decision to present a defense in his federal criminal case. Because the Court finds that Defendants' actions in allegedly denying Kelly the value of his employment do not constitute a substantive or procedural due process deprivation, Kelly's claim in Count III must also fail. See American Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999) (to support a claim under 42 U.S.C. § 1983 plaintiff must establish that he was "deprived of a right secured by the Constitution or laws of the United States and that the alleged deprivation was committed under color of state law.").

E. **Equal Protection (Count VI)**

Kelly alleges that, because of Defendants' personal animus toward him, he has been treated differently from others in the BPD who have returned from extended leaves of absence. Kelly alleges that this treatment has resulted in him being placed into a "class of one" and has violated his equal protection rights. The Supreme Court has recognized a "class of one" in equal protection claims "where the plaintiff alleges that he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Village of Willowbrook v. Olech, 528 U.S. 562, 564

(2000) (per curiam).

Kelly's amended complaint includes the factual allegation that only new applicants, and not other officers returning from a leave of absence, have been required to undergo inquiries regarding personal finances, mental stability, and background information. He has further alleged that no rational basis existed for the difference in treatment and that the treatment resulted from a personal animus toward him. These allegations are sufficient to state a claim for relief under equal protection analysis. Id.; see also Willis v. Town of Marshall, N.C., 426 F.3d 251, 263-64 (4th Cir. 2005) (allegation that a town board arbitrarily singled-out one among many individuals for lewd dancing in a community center was sufficient to support an Olech "class of one" claim).

Defendants argue, however, that Kelly's constitutional claims must fail because Defendants are entitled to the protection of qualified immunity. Qualified immunity protects "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). A qualified immunity inquiry begins with a determination of whether the plaintiffs "have alleged facts setting forth a valid claim for deprivation of a constitutional right." Williams v. Hansen, 326 F.3d 569, 574 (4th Cir. 2003). If the plaintiff's claims "survive this

threshold review, [the Court] must determine whether the right plaintiffs advance was clearly established at the time of its alleged violation so that a reasonable person would have known of the right." Id. A right is clearly established if "it would have been clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier v. Katz, 533 U.S. 194, 202 (2001). The Court will look to the settled law at the time of the alleged unconstitutional act and determine whether the right allegedly violated was clearly established. Robinson v. Balog, 160 F.3d 183, 187 (4th Cir. 1998).

The Court finds that it would be clear to a reasonable police official that treating Kelly in a disparate and allegedly abusive manner from those similarly situated to him would amount to a clear constitutional violation. See Franklin v. Clark, No. CCB-04-2042, 2006 WL 2819820, at *4 (D. Md. October 2, 2006) (holding that, for qualified immunity to apply, the defendant must establish that it would not be clear to a reasonable official that the conduct engaged in was unlawful). According to Kelly, Defendants were required to treat him as all other officers returning from leave of absence for an extended period of time. At the time Kelly was subjected to the allegedly disparate treatment, July 2005 through March 2006, the claim of an equal protection violation based on treating one individual differently from others similarly situated in an abusive, irrational, and intentional manner had been clearly established. See Village of Willowbrook, 528 U.S. at 564. While Defendants

argue that state law allowed the underlying activity, it had been clearly established that an equal protection violation could exist based on the disparate and irrational application of a valid statute. Id. (noting that the equal protection clause secures "every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents") (quoting Sioux City Bridge Co. v. Dakota County, 260 U.S. 441, 443 (1923)); see also Anderson v. Creighton, 483 U.S. 635, 639-40 (1987) (finding that the official action in question need not have been directly held to be unlawful, however, "in light of the pre-existing law, the unlawfulness must be apparent"). In light of preexisting equal protection jurisprudence, this Court finds that Defendants are not entitled to the protections of qualified immunity with respect to Count VI.

**F. First Amendment (Count VII)**

Kelly alleges that Defendants violated his rights under Article 40 of the Maryland Declaration of Rights and his right to petition the government for redress of grievances under the First Amendment of the U.S. Constitution by retaliating against him on account of his decision to present a defense in his federal criminal case and his decision to appeal the BPD Trial Board's termination decision.[4]

---

[4] "The freedoms protected by Article 40 of the Maryland Declaration of Rights have been interpreted by [the Court of Appeals of Maryland] to be co-extensive with the freedoms

The Fourth Circuit has held that "a public employee's petition, like his speech, is constitutionally protected only when it addresses a matter of public concern." Kirby v. City of Elizabeth, N.C., 388 F.3d 440, 448 (4th Cir. 2004). Thus, Kelly's allegation requires this Court to determine whether the content of his Trial Board appeal or his defense to his federal criminal charges involved matters of public concern. Id. Speech on a matter of public concern consists of "employee expression [that can be] fairly considered as relating to any matter of political, social, or other concern to the community." Connick v. Myers, 461 U.S. 138, 146 (1983). "'Personal grievances, complaints about conditions of employment, or expressions about other matters of personal interest' fall outside the First Amendment because they are not matters of public concern." Love-Lane v. Martin, 355 F.3d 766, 776 (4th Cir. 2004) (citing Stroman v. Colleton County Sch. Dist., 981 F.2d 152, 155-56 (4th Cir. 1992)).

Here, Kelly has made no claim that the defense he offered in his criminal case or his appeal of the Trial Board termination decision were matters of public concern. With regard to his appeal of the Trial Board's decision, Kelly's amended complaint only states "Plaintiff successfully petitioned and appealed his termination under state law." Paper No. 3., p. 2. With respect

---

protected by the First Amendment." Jakanna Woodworks v. Montgomery County, 344 Md. 584, 595 (1997) (citing Freedman v. State, 233 Md. 498, 505 (1964), rev'd on other grounds, 380 U.S. 51 (1965)).

to his federal criminal defense, Kelly's amended complaint only states that "Plaintiff was acquitted of federal criminal charges." Paper No. 3, p. 3. At no point does Kelly provide any details concerning the content of the relevant speech, nor does he assert that the speech constituted matters relating to the community beyond general employment grievances. See Love-Lane, 355 F.3d at 776. Further, the amended complaint alleges no facts indicating that the content of Kelly's speech in his appeal of the Trial Board decision or his presentation of a defense in his federal criminal case were substantial motivating factors in his alleged mistreatment. See De Bleecker v. Montgomery County, Md., 438 A.2d 1348, 1354 (Md. 1982) ("the employee has the burden to show that the protected conduct was a substantial or motivating factor in his removal") (citing Mt. Healthy City Board of Ed. v. Doyle, 429 U.S. 274 (1977)). Because Kelly failed to allege that the relevant speech constituted a matter of public concern and failed to allege facts showing that Defendants' actions were motivated by the protected speech, Count VII will be dismissed.

**G. State Law Retaliation (Count IV)**

Kelly alleges that Defendants violated his rights under Maryland Law by retaliating against him on account of his decision to appeal the Trial Board's termination decision. Retaliation by a police department against an officer for exercising his or her rights under the Maryland Law Enforcement Officer Bill of Rights ("LEOBR") is expressly prohibited by

Maryland law.[5] See Blondell v. Baltimore City Police Dept., 655 A.2d 34, 38 (Md. Ct. Spec. App. 1995). To establish a cause of action for retaliation under LEOBR, "the employee has the burden to show that the questioned conduct was a substantial or motivating factor in [the disciplinary action taken against him or her]." Blondell, 655 A.2d at 38 (citing DiGrazie v. County Executive, 418 A.2d 1191, 1197 (Md. 1980)).

This Court has found that "[t]o the extent that a claim under [§ 3-103(d)] alleges retaliation for the lawful exercise of constitutional rights, it is in pari materia with the federal employee free speech claim." O'Connell v. Montgomery County, Md., 923 F. Supp. 761, 767 (D. Md. 1996) (citing DiGrazie, 418 A.2d at 1191). Because the Court has determined that Kelly failed to state a First Amendment claim, his cause of action under Count IV must also fail. Id.

**IV. CONCLUSION**

For the reasons stated above, Defendants' motion to dismiss will be granted in part and denied in part. Counts I, II, III, IV, V, and VII will be dismissed. A separate order consistent

[5] Maryland law provides that:

> A law enforcement officer may not be discharged, disciplined, demoted, or denied promotion, transfer, or reassignment, or otherwise discriminated against in regard to his employment or be threatened with any such treatment, because the law enforcement officer: (1) has exercised or demanded the rights granted in this subtitle; or (2) has lawfully exercised constitutional rights.

Md. Code Ann., Pub. Safety § 3-103(d).

with the reasoning of this Memorandum will follow.

/s/
William M. Nickerson
Senior United States District Judge

Dated: October 24, 2006